# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NORTHROP GRUMMAN
CORPORATION,

       Plaintiff,

    v.

AXIS REINSURANCE COMPANY,

       Defendant,
       Cross-Claimant, and
       Cross-Defendant,

    v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA

       Defendant,
       Cross-Claimant, and
       Cross-Defendant.

No. 1:17-CV-01738

(Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 26, 2018

Three motions for summary judgment—one filed by each of the three parties

to this action—are pending before this Court. Also pending is a motion to strike or

stay filed by the AXIS Reinsurance Company. For the reasons that follow, the

Court will grant, in part, the summary judgment motions filed by Northrop

Grumman and the National Union Fire Insurance Company of Pittsburgh as well as the motion to strike or stay filed by AXIS.

## I. BACKGROUND

Like many employers, the Northrop Grumman Corporation gives its employees the opportunity to participate in retirement plans through which employees may invest a portion of their earnings in preselected funds. Northrop Grumman created an "Investment Committee" and an "Administrative Committee" to manage these plans.

The committees' stewardship of the plans is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[1] This law imposes a number of fiduciary duties on the committees' individual members[2] and allows them to be held personally liable when a breach of their duties results in a loss to the plans.[3] To protect those individuals, Northrop Grumman purchases fiduciary liability insurance.

### A. Northrop Grumman's Fiduciary Liability Insurance

From August 1, 2006, to August 1, 2007, Northrop Grumman carried at least $45,000,000 worth of fiduciary liability insurance. The first $15,000,000 of that

---

[1]  29 U.S.C. § 1001 *et seq.*

[2]  29 U.S.C. § 1104.

[3]  29 U.S.C. § 1109.

coverage was provided through a policy issued by National Union;[4] the second $15,000,000 (which kicked in when the first $15,000,000 was exhausted) through a policy issued by Continental Casualty Company;[5] and the third $15,000,000 (which kicked in when the first $30,000,000 was exhausted) through a policy issued by AXIS.[6] All three policies in this tower of insurance were "claims-made" policies—that is, they covered claims "made" during the 2006-2007 period, no matter when the claims' underlying conduct allegedly occurred.

Claims, however, are not always considered "made" at the time they are reported to the insurers. For example, claims reported *after* the 2006-2007 policy period are nevertheless considered made *during* the 2006-2007 policy period if the claims "alleg[e] any Wrongful Act which is . . . related to any Wrongful Act alleged" in any other claim made during the 2006-2007 policy period.[7] The effect of this "Relation-Back Provision" was that, once a claim was made during the 2006-2007 policy period, a subsequent claim alleging a related "Wrongful Act" (as that term was defined by the policies) would also be covered by that period's insurance tower.

---

[4]  ECF No. 31 at AA1-AA58.

[5]  ECF No. 31 at AA59-AA72.

[6]  ECF No. 31 at AA73-AA84.

[7]  2006-2007 National Union Policy § 8(b), *as amended by* Endorsement 12.

Northrop Grumman also had a tower of fiduciary liability insurance covering the period from August 1, 2016, to August 1, 2017; as before, the first $15,000,000 of that tower's coverage was provided through a claims-made policy issued by National Union.[8] Complementing the earlier policies' Relation-Back Provision, the 2016-2017 policy specifically excluded coverage for claims "alleging . . . related Wrongful Act[s] alleged or contained[] in any claim which has been reported  prior to the inception of this policy."[9] Combined with the 2006-2007 policies' Relation-Back Provision, this "Prior Notice Exclusion" means that all claims alleging related Wrongful Acts are covered *either* by the 2006-2007 tower *or* the 2016-2017 tower—but not both.

## B.    Class Action Lawsuits

On September 28, 2006, a class action lawsuit ("*Grabek*") was filed against members of Northrop Grumman's Investment Committee and Administrative Committee on behalf of all participants and beneficiaries of the company's retirement plans.[10]  *Grabek*'s operative complaint alleged that the committee members violated their ERISA fiduciary duties by allowing the plans to pay excessive administrative fees to Northrop Grumman[11] and third-party service

---

[8]    ECF No. 31 at AA85-AA167.

[9]    *Id.* § 5.B, *as amended by* Endorsement 37.

[10]    *Grabek v. Northrop Grumman Corporation*, No. 06-6213 (C.D. Cal. filed Sept. 28, 2006).

[11]    *Grabek*'s Revised Consolidated Second Amended Complaint (ECF No. 31 at AA240-AA271) ¶ 63.

providers,[12] and by allowing the plans to pay excessive investment management fees on various funds offered by the plans, including an "Emerging Markets Fund."[13] Northrop Grumman notified its insurers about the suit, who determined that the claim was made during the 2006-2007 policy year; correspondingly, its defense costs were covered by that year's insurance tower.[14]

At its outset, the *Grabek* plaintiffs were only seeking to hold the committee members liable for ERISA violations allegedly committed between September 28, 2000, and September 28, 2006.[15] They eventually convinced the court to extend that period to May 11, 2009.[16] The *Grabek* action, however, continued to putter along, and its plaintiffs eventually sought another expansion, this time to a date twenty months before the then-unscheduled trial date.[17] The court denied that request on June 21, 2016.[18]

Less than three months later (and presumably as a result of that denial), another class action lawsuit ("*Marshall*") was filed against members of Northrop Grumman's Investment Committee and Administrative Committee on behalf of all

---

[12]  *Id.* ¶ 94.B.

[13]  *Id.* ¶ 57.D.

[14]  *See* October 9, 2006 Letter from AIG to Northrop Grumman (ECF No. 26-4 at NUMSJ0062-NUMSJ0064).

[15]  *See* June 21, 2016 Order Denying Plaintiffs' Motion to modify Discovery Period End Date (ECF No. 31 at AA411-418).

[16]  *Id.*

[17]  *Id.*

[18]  *Id.*

participants and beneficiaries of the company's retirement plans.[19]  *Marshall*'s

operative complaint, as did *Grabek*'s, alleged that the committee members violated

their ERISA fiduciary duties by allowing the plans to pay excessive administrative

fees to Northrop Grumman[20] and a third-party service provider,[21] and by allowing

the plans to pay excessive investment management fees on the plans' Emerging

Markets Fund.[22]  That complaint also specifically notes that *Grabek* was a "related

case."[23]

Northrop Grumman attempted to obtain coverage for *Marshall* under the

2016-2017 insurance tower,[24] but National Union (as noted above, issuer of the

first layer of that tower) took the position that *Marshall* alleged Wrongful Acts that

were related to the  Wrongful Acts alleged in *Grabek*, and that, therefore, coverage

properly belonged under the 2006-2007 tower.[25]  Because National Union believed

that the coverage available under the first two layers of that tower ($30,000,000)

had been depleted defending *Grabek* and a related Department of Labor

---

[19]  *Marshall v. Northrop Grumman Corporation*, No. 16-6974 (C.D. Cal. filed September 9, 2016).

[20]  *Marshall*'s Second Amended Complaint (ECF No. 31 at AA551-AA594) ¶¶ 51-63.

[21]  *Id.* ¶¶ 64-79.

[22]  *Id.* ¶¶ 80-91.

[23]  *Id.* ¶ 102.

[24]  September 22, 2016 Letter from Northrop Grumman to AIG (ECF No. 26-4 at NUMSJ0275-NUMSJ-0276).

[25]  November 16, 2016 Letter from AIG to Northrop Grumman (ECF No. 26-4 at NUMSJ0277-NUMSJ0289).

investigation,[26] it argued that coverage for *Marshall* was owed by AXIS (as noted above, issuer of the third layer of the 2006-2007 tower). AXIS, however, took the position that *Marshall* was not related to *Grabek* and *Marshall*'s coverage, therefore, belonged in the 2016-2017 tower—*i.e.*, that National Union had to pay as that tower's first layer.

### C. Procedural History

The dispute between Northrop Grumman, National Union, and AXIS about coverage for the *Marshall* action is the genesis of the instant lawsuit. Northrop Grumman's complaint, brought against both National Union and AXIS, seeks to hold at least one of them responsible for covering *Marshall*'s defense costs.[27] Nation Union's[28] and AXIS's[29] cross-claim complaints each argue that the other defendant is responsible for coverage.

In the pending motions for summary judgment, Northrup Grumman and National Union argue that AXIS is liable for *Marshall* defense costs; AXIS asserts that such liability lies with National Union.

---

[26]  See *infra* § II.B.

[27]  ECF No. 1.

[28]  ECF No. 8

[29]  ECF No. 9.

## II. DISCUSSION

### A. Whether *Grabek* and *Marshall* Allege "Related" Wrongful Acts

When determining if claims are "related"[30] under a liability insurance policy, a court must determine if there is either a "logical" or a "causal" connection between them.[31] No party here argues that there is a causal connection between *Grabek*'s and *Marshall*'s allegations. Northrup Grumman and National Union, however, assert that there is a logical connection. AXIS disagrees.

As noted above, the allegedly offending behavior in both *Grabek* and *Marshall* is the administration of Northrop Grumman's employee retirement plans by Northrop Grumman's Investment Committee and Administrative Committee. Each case's operative complaint relates the same specific behaviors: the plans' payment of allegedly excessive administrative fees to Northrop Grumman and third party service providers, and the plans' payment of allegedly excessive investment management fees on various funds within the plan, including the Emerging Markets Fund. In opposing a finding of "relatedness," AXIS does not focus on distinguishing the type of complained-of behaviors in *Grabek* from the

---

[30] Regarding choice of law, National Union's brief (ECF No. 26-2) notes that California and Virginia law may both be applicable to the "relatedness" issue, but avers that there is no meaningful distinction between the two. *Id.* at 16 n.4. Northrop Grumman's brief (ECF No. 29) agrees that there is "[n]o significant conflict of law . . . with respect to this motion." *Id.* at 16 n.6. AXIS's brief (ECF No. 31) also fails to identify any important legal distinctions between the available bodies of law. *See id.* at 13 n.13, 25 n.10. This Court, therefore, will not decide the choice-of-law question, but will cite useful authority as needed.

[31] *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 873 (1993).

type of complained-of behaviors in *Marshall*. Instead, AXIS focuses on differences in the two actions' parties and the fact that *Grabek* and *Marshall* seek to recover for actions taken at different points in time.

It is true that there are differences between the *Grabek* parties and the *Marshall* parties. Regarding the plaintiffs, *Grabek*'s class is composed of all participants and beneficiaries of the Northrop Grumman plans during the period running from September 28, 2000, to May 11, 2009; *Marshall*'s class, on the other hand, comprises all participants and beneficiaries of the Northrop Grumman plans during a period that begins September 9, 2010. AXIS correctly points out that the sixteen-month gap between the end of the *Grabek* class and the beginning of the *Marshall* class means that some members of the *Grabek* class are not members of the *Marshall* class, and vice-versa. The flip side of that coin, however, is that there is likely a very large overlap between members of the *Grabek* and *Marshall* classes.

Regarding the defendants, AXIS notes that the actual composition of the Administrative Committee and the Investment Committee has changed over time, with the result being that, since ERISA imposes *personal* liability, judgment in the two actions, if imposed, could be against completely different individuals. While perhaps true, that does not change the fact that all defendants were acting in their

committee-member capacities and, most importantly to this Court, were all continuing in the same course of allegedly illegal conduct.

The existence of that continuing course of allegedly illegal conduct also overcomes AXIS's focus on the fact that *Grabek* and *Marshall* are seeking recovery for actions taken at different points in time. While it is true that all alleged fiduciary duty breaches in *Grabek* occurred earlier in time than all alleged fiduciary duty breaches in *Marshall*, the type of breaches alleged (and the damages alleged to have resulted) are all of exactly the same type and are, on their face, part of a "single course of conduct."[32]

This Court concludes, therefore, that *Marshall* and *Grabek* alleged related Wrongful Acts. Consequently, Northrop Grumman's claim for coverage of the *Marshall* action should, pursuant to the 2006-2007 policies' Relation Back Provision and the 2016-2017 policies' Prior Notice Exclusion, be considered made at the time Northrop Grumman made its claim for coverage of the *Grabek* action—*i.e.*, during the 2006-2007 policy year.

**B. The Amount of Coverage Remaining Available Under the 2006-2007 AXIS Policy**

As a result of the "relatedness" finding above, coverage for *Marshall* should be provided under the 2006-2007 insurance tower. There remains a dispute,

---

[32] *Continental Cas. Co. v. Wendt*, 205 F. 3d 1258 (11th Cir. 2000).

however, about the amount of coverage remaining available under the 2006-2007 AXIS policy.

While *Grabek* was underway, the Department of Labor initiated an ERISA-based investigation into Northrup Grumman's retirement plans,[33] which investigation eventually ended in settlement.[34] The insurers determined that the investigation alleged Wrongful Acts that were related to the Wrongful Acts alleged in *Grabek*. Therefore, the investigation was covered by the 2006-2007 policy year's insurance tower pursuant to the Relation-Back Provision discussed above.

For reasons unimportant to the disposition of the instant motions, AXIS believes that National Union and Continental should not have covered the DOL Investigation under their 2006-2007 policies, and that even if *Marshall* coverage belongs under the 2006-2007 insurance tower, some of the $30,000,000 limits of those policies is still available to cover *Marshall*. Attempting to assert that claim, AXIS sued National Union and Continental in the United States District Court for the Central District of California (the "California coverage action") on November 30, 2017—one day before Northrop Grumman filed the case before this Court.[35]

---

[33] *See* June 21, 2016 Letter from the United States Department of Labor (ECF No. 30-1 at 883-896).

[34] *See* Confidential Settlement Agreement (ECF No. 30-1 at 942-949).

[35] *AXIS Reinsurance Company v. Northrop Grumman Corporation*, No. 17-8660 (C.D. Ca. filed Nov. 30, 2017).

In its summary judgment motion here, Northrop Grumman asks this Court to decide how much coverage remains available under the 2006-2007 AXIS policy. Resolution of this question, however, will necessarily require this Court to answer the question presented squarely in the California coverage action—*i.e.*, to decide whether Nation Union and Continental should have covered the DOL investigation under their 2006-2007 policies. AXIS's motion to strike or stay asks this Court to either strike all references to what it refers to as "the DOL settlement issue" from Northrop Grumman's briefs or, in the alternative, to stay further litigation here until the California coverage action is resolved. This Court believes that a stay is more appropriate, and will order one.

## III. CONCLUSION

For the reasons discussed above, Northrop Grumman's claim for coverage of the *Marshall* action should be considered made at the time Northrop Grumman made its claim for coverage of the *Grabek* action. Having resolved that issue, the Court will stay this action pending resolution of the California coverage action. An appropriate order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge